# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Frederick J. Kapala | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 50195 | **DATE** | 7/16/2012 |
| **CASE TITLE** | Developers Surety & Indemnity Company v. American National Bank of DeKalb County | | |

**DOCKET ENTRY TEXT:**

Plaintiff's motion for summary judgment as to liability on Count I [29] is granted. Because this case is still pending as to the amount of damages on Count I and as to Count II, the previously scheduled discovery hearing set before the magistrate judge and any other previously imposed deadlines remain in place.

■[ For further details see text below.]

Docketing to mail notices.

Plaintiff, Developers Surety and Indemnity Company ("Surety"), has filed suit against defendant, American National Bank of DeKalb County ("ANB"), alleging that ANB failed to comply with the terms of a two-page document that Surety refers to as a "Set Aside Letter." In its complaint, plaintiff brings claims for breach of contract (Count I) and conversion (Count II). Currently before the court is plaintiff's motion for summary judgment only as to ANB's liability on Count I. For the reasons discussed below, plaintiff's motion is granted.

## I. BACKGROUND[1]

Real estate developer Eagle Homes – Prairie Springs, LLC ("Eagle") purchased property and began construction on a new subdivision in the Village of Malta known as Prairie Springs. In order to acquire the property and finance the construction, Eagle obtained a loan from ANB in the principal amount of $7.6 million.

As a condition of allowing Eagle to proceed with the development, the Village of Malta required Eagle to undertake certain subdivision improvements, including onsite paving, excavation of a pond and other site preparation, installation of a new village well, and expansion of the sewer system. In order to secure Eagle's obligation to make these subdivision improvements, Eagle obtained six subdivision performance bonds from Surety, which is in the business of issuing surety bonds on behalf of real estate developers, in favor of the Village of Malta. These six bonds had an aggregate penal sum in the amount of $2,576,967.18, which sum was based on 120% of the estimated cost of the improvements.

In March 2005, ANB and Surety entered into a written agreement relating to the Prairie Springs subdivision.[2] Surety refers to this agreement as a "Set Aside Letter," although the document itself does not contain any title. In the agreement, the parties noted that, as a condition of the development of the subdivision, "[Eagle] must complete certain Public Improvements as required by Village of Malta." The agreement then provides:

In consideration of a bond, or bonds, in the approximate amount of $2,576,967.18 executed by

> Developers Surety and Indemnity Company (Surety) to guaranty the completion of the Public Improvements, and as a direct inducement for Surety's execution of the bonds, [ANB] agrees to allocate from the loan and set aside the sum of $2,576,967.18, to be used for the completion of the Public Improvements, and no other purpose.

The agreement also provided that, if Eagle failed to complete or pay for the Public Improvements, and Surety was called upon by the Village of Malta to complete the Public Improvements, then "any undisbursed balance of the funds set aside will . . . be retained by [ANB] and made available to Surety . . . for the completion or payment of Surety's obligations under the bonds." At the end of the agreement, the term "Public Improvements" is defined as "the Public Infrastructure onsite and offsite Public Improvements necessary for the 'Project.'"

In June 2006, Eagle stopped work on the Prairie Springs subdivision. At that time, the subdivision improvements covered by the bonds had not yet been completed, although the penal amounts of the six bonds had been reduced to $1,244,890.38, reflecting that at least some of the work had been done. Thereafter, the Village of Malta demanded that Surety complete certain improvements described in the bonds that Eagle had failed to perform. According to Surety, at the time of default, ANB had only disbursed $1,554,171.63 of the loan proceeds for the work specified in the bonds, which should have left $1,022,795.55 remaining in set aside funds. However, ANB never set aside any funds specifically to be used for the completion of the Public Improvements specified in the bonds. Thus, when Surety demanded that ANB disburse the remainder of the funds that were set aside, there were no such funds and ANB refused to pay.[3]

## II. ANALYSIS

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Hemsworth v. Quotesmith.com, Inc., 476 F.3d 487, 489-90 (7th Cir. 2007). The court must draw all reasonable inferences in the light most favorable to the party opposing the motion. Hemsworth, 476 F.3d at 490. To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (quotation marks omitted).

In its motion for summary judgment, Surety seeks summary judgment only as to ANB's liability on the breach of contract claim. Surety argues that the undisputed facts show that ANB breached the parties' agreement when it failed to set aside $2,576,967.18 from the loan proceeds to be used only for completion of the Public Improvements covered by the six bonds, and when it disbursed the entire amount of the loan proceeds, including nearly $900,000 to cover interest owed by Eagle on the loan, without regard to completion of the bonded improvements.[4]

In its response, ANB argues that genuine issues of material fact preclude summary judgment. Specifically, ANB contends that it disbursed "well in excess of $2,576,967.18 for public improvements," and that the term "Public Improvements" is not limited to bonded improvements, as Surety suggests, but rather is defined broadly in the agreement. Thus, ANB argues that there is a dispute remaining as to whether Surety suffered any damages at all, which is a necessary element of its breach of contract claim.

Under Illinois law, which the parties agree applies in this diversity action, "[t]he primary goal of contract interpretation is to give effect to the intent of the parties." Richard W. McCarthy Trust Dated Sept. 2, 2004 v. Ill. Cas. Co., 408 Ill. App. 3d 526, 535 (2011). "In determining the intent of the parties, a court must consider the contract document as a whole and not focus on isolated portions of the document." Id. "If the language of a contract is clear and unambiguous, the intent of the parties must be determined solely from the language of the contract document itself, which should be given its plain and ordinary meaning . . . ." Id. "The determination of whether a contract is ambiguous is a question of law for a court to decide," and the fact that "the parties disagree on the meaning of a term of a contract does not, in itself, render that term of the contract ambiguous." Id. "[A] contract is ambiguous when the language used in the contract is susceptible to more than one reasonable

interpretation." Id.

In this case, there can be no dispute that the parties' agreement required ANB to "allocate from the loan and set aside the sum of $2,576,967.18, to be used for the completion of the Public Improvements, and no other purpose."[5] The parties disagree, however, on the meaning of the term "Public Improvements." In the court's view, when reading the contract document as a whole, there is only one reasonable interpretation of the term "Public Improvements," and that is the specific improvements that were guaranteed by Surety through the issuance of the six subdivision performance bonds.

ANB's position that the term refers to a "much more generic and obviously much larger category" than only the bonded improvements is inconsistent with several key provisions of the agreement. For example, the parties' agreement begins by noting that Eagle "must complete certain Public Improvements as required by Village of Malta." The only improvements that were specifically required by the Village of Malta is the work identified in the six bonds. The next paragraph of the agreement indicates that Surety has issued bonds in the amount of $2,576,967.18 "to guaranty the completion of the Public Improvements." Because the only work guaranteed by Surety is the work specified in the bonds, the term "Public Improvements" must refer to the bonded improvements and not to some other "generic" category of improvements. Similarly, the agreement contemplates the procedure to be followed in the event that "Surety is called upon by the [Village of Malta] to complete the Public Improvements," but Surety would only be obligated to complete the bonded work, not some additional, unspecified work. Finally, under the agreement, ANB has the right to "directly contract for and complete the Public Improvements instead of making the balance of the set aside funds available to Surety for that purpose." If the term "Public Improvements" referred to a larger category of work rather than only the bonded work, then the cost of that work would be much greater than the balance of the set aside funds and there would be no circumstance in which ANB would ever directly contract for and complete this unspecified amount of work, thereby rendering this provision meaningless.

In its response, ANB argues that the definition of the term "Public Improvements" in the agreement supports its interpretation. The court acknowledges that the definition could have been drafted with more precision as it is unwise to define a term by using the term itself ("Public Improvements" is defined as "the Public Infrastructure onsite and offsite Public Improvements . . . ."). Nevertheless, the use of the term "Infrastructure" within this definition is consistent with the reasonable interpretation discussed above that "Public Improvements" refers to the bonded improvements. A review of the bonds reveals that the Village of Malta was concerned with and required assurances that improvements such as onsite paving, construction of a new well, and onsite and offsite additions to the sewer system would be completed. These types of improvements all fall within the ordinary meaning of the term "Public Infrastructure," whereas other work that was performed by Eagle and for which loan proceeds were disbursed, such as the actual construction of houses, cannot be considered infrastructure.

After consideration of the parties' agreement as a whole, the court finds that the contract is clear and unambiguous and required ANB to set aside the sum of $2,576,967.18 to be used only for the completion of the improvements specified in the six bonds issued by Surety. ANB breached this agreement by failing to allocate or set aside any funds whatsoever and by disbursing the entire amount of the loan proceeds without regard to the completion of the bonded improvements.[6] As for damages, although a precise figure cannot yet be struck, it is clear that Surety has suffered some damage already based on its completion of the paving project, and that it will suffer additional damages as the Village of Malta requires Surety to perform additional work under the terms of the bonds.

### III. CONCLUSION

Based on the foregoing, the court grants Surety's motion for summary judgment on the issue of ANB's liability on Count I of the complaint. Because this case is still pending as to the amount of damages on Count I and as to Count II, the previously scheduled discovery hearing set before the magistrate judge and any other previously imposed deadlines remain in place.

1. The relevant background facts are taken from the parties' statements of undisputed facts, the responses thereto, and all accompanying materials, and in the event of a dispute, all reasonable inferences are drawn in favor of defendant as the non-moving party.

2. Eagle also signed the agreement, indicating that it acknowledged and concurred with the agreement.

3. Pursuant to the terms of the parties' agreement, Surety also allowed ANB the opportunity "to directly contract for and complete the Public Improvements instead of making the balance of the set aside funds available to Surety for that purpose." ANB declined this opportunity.

4. Surety unduly emphasizes the monies that were used by ANB to cover interest owed by Eagle, as if those monies were specifically set aside for the Public Improvements and then subsequently withdrawn from the set aside fund. Because there never was a set aside fund, this obviously is not the case. In any event, in the court's view, as to the issue of liability it is immaterial whether the monies that should have been included in the set aside fund were used to pay interest or to pay some other expenses of construction.

5. In its response, ANB argues that the parties' agreement "does not require establishment of an escrow account, identification of any specific funds from the $7.6 million loan, or any other type of account segregation." In light of the clear and unambiguous language cited above, the court rejects this contention. Although the contract may not specify the precise mechanism to be employed, the agreement clearly obligated ANB to "allocate" and "set aside" a certain amount of funds, but ANB failed to do so.

6. In its response, ANB complains that it was never provided copies of the bonds. However, this does not excuse ANB's breach, especially since there was nothing preventing ANB from requesting copies of the bonds from either Surety or Eagle before entering into this agreement.